UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| JODDY TERRELL HENDERSON, SR., | ) | Case No. 12-42355-705 |
| | ) | Judge Kathy A. Surratt-States |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| MISSOURI VALLEY FEDERAL | ) | **Adversary No. 12-4164-659** |
| CREDIT UNION, | ) | |
| | ) | **PUBLISHED** |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | |
| | ) | |
| JODDY TERRELL HENDERSON, SR., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The matter before the Court is the Complaint to Determine Dischargeability of Debt, Defendant's Answer and Counter-Claim to Complaint to Determine Dischargeability of Debt, Defendant's Trial Brief and Plaintiff's Trial Brief. A trial was held on November 6, 2012, at which Plaintiff appeared by counsel and Defendant appeared in person and by counsel. The matter was taken under submission. Upon consideration of the record as a whole, the Court issues the following **FINDINGS OF FACT**:

Defendant Joddy Terrell Henderson, Sr. (hereinafter "Debtor") filed a Voluntary Petition for relief under Chapter 7 of the Bankruptcy Code on March 15, 2012. Prior to March 24, 2008, Debtor resided at 3138 Caroline Street in St. Louis, Missouri (hereinafter "3138 Caroline") with his then-girlfriend and now wife and Debtor now resides at 3138 Caroline. Debtor states that from November 2007 through June 2008, he lived with his now ex-girlfriend at 54 Dogwood Drive in St. Peters, Missouri (hereinafter "54 Dogwood"). 54 Dogwood is in St. Charles County.

On or about March 24, 2008, Debtor purchased a 2002 Dodge Ram (hereinafter "Vehicle")

from Lou Fusz Chrysler Jeep Dodge in O'Fallon, Missouri (hereinafter "Lou Fusz"). To purchase the Vehicle, Debtor traded-in a 1999 Chevrolet Tahoe and obtained financing for the remaining balance from Plaintiff Missouri Valley Federal Credit Union (hereinafter "Plaintiff") through approval of the Credit Union Lending Systems (hereinafter "CULS"). CULS is an entity that is comprised of a group of credit unions whereby a centralized office approves loans from its member credit unions and thereafter, the loan is sold by the car dealership to the credit union where the loanee is a member.

Plaintiff is a member credit union of CULS and only provides services to its members. Under the Section 5, Part I of the Certificate of Approval of Amendment of Charter/Bylaws for Plaintiff, as mandated by the National Credit Union Administration, "...membership shall be limited to those having the following common bond: 1. All persons who live, worship or work in the businesses and other legal entities located in St. Charles County, Missouri..." Pl. Ex. 6. Thus to obtain financing through Plaintiff, the individual seeking a loan must be a member of Plaintiff because that individual: 1) lives in St. Charles County; 2) worships in St. Charles County; or 3) works in St. Charles County.

Debtor, either personally or with the assistance of a Lou Fusz employee, completed the paperwork to obtain financing from Plaintiff; the paperwork includes the Credit Union Lending Systems Retail Installment Contract and Security Agreement, Credit Union Lending Systems Form D1108-FK1 (MO) Rev. 10/01, the Lou Fusz Chrysler Jeep Dodge Vehicle Buyers Order and a Lou Fusz Dodge Form. See Plaintiff's Response to Defendant's First Request for Production of Documents Directed to Plaintiff Missouri Valley Federal Credit Union. On the Credit Union Lending Systems Retail Installment Contract and Security Agreement, Debtor's address is listed as 54 Dogwood. See Pl. Ex. 1; Pl. Ex. 3. Both Plaintiff and Debtor submitted the Credit Union Lending Systems Form D1108-FK1 (MO) Rev. 10/01 document, which is Plaintiff's Membership Application. The copy submitted by Plaintiff states that Debtor's address is 54 Dogwood and that Debtor is

-2-

eligible for membership of Plaintiff because Debtor "lives in St. Charles County." See Pl. Ex. 3. Debtor testified that this form was likely filled in by an employee at Lou Fusz Dodge. The version submitted by Debtor, which appears to be the original document, is merely signed by Debtor and dated by March 24, 2008; the remainder of the form was left blank. See Def. Ex. 2. Attached to the Credit Union Lending Systems Form D1108-FK1 (MO) Rev. 10/01 document is a copy of Debtor's Missouri Driver's License, which states that Debtor's address is 3138 Caroline. See Pl. Ex. 3. The Lou Fusz Chrysler Jeep Dodge Vehicle Buyers Order lists Debtor's address as 54 Dogwood. See Plaintiff's Response to Defendant's First Request for Production of Documents Directed to Plaintiff Missouri Valley Federal Credit Union. The Lou Fusz Dodge Form states that Debtor's present home address is 54 Dogwood, that Debtor has lived there for one (1) month and that Debtor's previous address is 3138 Caroline where Debtor lived for 10 years. See Plaintiff's Response to Defendant's First Request for Production of Documents Directed to Plaintiff Missouri Valley Federal Credit Union.

Also included in Plaintiff's Exhibit 3 is a Loan Link Lending Center document dated March 22, 2008, which appears to be a credit report performed by Transunion. The Loan Link Lending Center document states that Debtor's current address is 3138 Caroline and that Debtor has resided at 3138 Caroline for 10 years and 2 months. See Pl. Ex. 3. This Loan Link Lending Center document also shows that on March 21, 2008, numerous inquiries were made by various car loan entities with the following subnames: HSBC Auto, GMAC, Chase, AGF # 2842, Daimlrchrysl, Citi Auto, COAF, Culendingsys, Americredit, Credco IMS, and Hollywood MT. Pl. Ex. 3. The Loan Link Lending Center Form also shows that on March 22, 2008, one inquiry was made by a car loan entity with the following subname: Culendingsys.

The paperwork was sent by Lou Fusz to CULS for approval, and thereafter, CULS sent the paperwork to Plaintiff. This process took approximately nine (9) days in that on or about April 2, 2008, the paperwork was received by Plaintiff and presumably, the loan was then sold to Plaintiff

as the appropriate credit union based on Debtor's membership.  Plaintiff then sent a payment booklet to Debtor.  Plaintiff did not take any action to verify that the information in the paperwork was accurate, including whether Debtor lived in St. Charles County at the time the financing was provided. See Plaintiff's Answers to Defendant's First Set of Interrogatories Directed to Plaintiff Missouri Valley Federal Credit Union, ¶ 11.

Debtor argues that at all times relevant, he believed that he lived in St. Charles County because he ate his meals at 54 Dogwood, he slept at 54 Dogwood, his clothes were at 54 Dogwood, he left to go to work from 54 Dogwood, he returned from work to 54 Dogwood, he spent the majority of his time at 54 Dogwood and he received some of his mail at 54 Dogwood.  Debtor further offered a UPS Mailer form for a package which was shipped to Debtor at 54 Dogwood from Lou Fusz on March 28, 2008, which Debtor purports to show that he lived at 54 Dogwood. See Def. Ex. 1.

Plaintiff presented the testimony of Joseph Adewunmi (hereinafter "Mr. Adewunmi"), manager of CRI Commercial Properties which is responsible for the maintenance at 54 Dogwood. Mr. Adewunmi testified that he has never seen Debtor before and that neither he nor CRI Commercial Properties has ever been informed that Debtor lived at 54 Dogwood.  Mr. Adewunmi admits that but for a maintenance call however, he has no reason to be at the property where 54 Dogwood is located.

Plaintiff also presented the testimony of Greg Kelleher (hereinafter "Mr. Kelleher"), a collection manager who has worked for Plaintiff for over 16 years, who testified that in order to obtain financing from Plaintiff, Debtor was required to be a member of Plaintiff.  Debtor represented that he lived at 54 Dogwood which thereby made Debtor eligible to become a member of Plaintiff and thus to obtain financing through Plaintiff.  Mr. Kelleher further testified that while Plaintiff did not investigate the accuracy of the statements made by Debtor in the paperwork, Plaintiff would not have had much opportunity to do so because CULS, as Plaintiff's agent, approved the loan based

-4-

on its review of the paperwork, then sent the paperwork to Plaintiff. Mr. Kelleher stated that CULS was aware of Plaintiff's membership requirements and should have had all the paperwork and the Loan Link Lending Center document, including the instances where 54 Dogwood and 3138 Caroline appear as Debtor's address, at the time CULS approved the loan.

Plaintiff submitted the affidavit of Rich Chrismer (hereinafter "Mr. Chrismer"), the Director of Elections for St. Charles County, in which Mr. Chrismer states that upon his review as custodian of the records of all voter registration and histories in St. Charles County, he has found no record of any voter registration of Debtor in St. Charles County. Plaintiff also submitted the affidavit of John Gilbert (hereinafter "Mr. Gilbert"), the custodian of the records of the City of St. Louis Assessor's Office, to which a document was attached which shows that Debtor paid the 2008 Personal Property Taxes for his 1999 Chevrolet Tahoe in St. Louis City and in so doing, Debtor affirmed that on January 1, 2008, he owned no other vehicle other than the 1999 Chevrolet Tahoe. Debtor testified that he paid the 2008 Personal Property Taxes in St. Louis City despite his belief that he lived in St. Charles County because he received the tax bill, this was the first vehicle he ever owned so he did what he thought he was supposed to do.

Debtor argues that at all times relevant, he believed that he lived in St. Charles County because he ate his meals at 54 Dogwood, he slept at 54 Dogwood, his clothes were at 54 Dogwood, he left to go to work from 54 Dogwood, he returned from work to 54 Dogwood, he spent the majority of his time at 54 Dogwood and he received some of his mail at 54 Dogwood. Debtor further offered a UPS Mailer form for a package which was shipped to Debtor at 54 Dogwood from Lou Fusz on March 28, 2008, which Debtor purports to show that he lived at 54 Dogwood. See Def. Ex. 1.

Debtor ultimately defaulted in his payments, the Vehicle was repossessed and sold, and a deficiency balance of $6,595.84 remained. On or about June 27, 2011, Plaintiff filed suit against Debtor in the Circuit Court of St. Charles County, Missouri for Count I-Suit on Account and Count

II-Fraud.  A default judgment was entered against Debtor on November 8, 2011 in the amount of $8,561.96 for a judgment of $7,561.96 on Count I-Suit on Account, which comprises a principal amount of $6,595.41, interest of $366.55, attorney's fees of $600.00, court costs of $100.20, and post judgment interest at the contract rate of 13.99% and a judgment of $7,561.96 for Count II-Fraud, plus $1000.00 in punitive damages.  See Pl. Ex. 2.

Plaintiff alleges that the default judgment should be excepted from discharge pursuant to Section 523(a)(2)(A) because Debtor falsely stated that he lived in St. Charles County at the time he obtained financing for the Vehicle with the intent to deceive Plaintiff.  Plaintiff argues that it has met all the requirements to except this debt from discharge.

Debtor argues that Plaintiff seeks to conflate domicile, a legal term of art, with where one lives or is a resident, words which have subjective meaning.  Debtor argues that he did not make a false statement because he believed in good faith and still believes, that he lived at 54 Dogwood at the time he obtained financing from Plaintiff.  Debtor further argues that based on his good faith belief, he did not intend to deceive Plaintiff.  Alternatively, Debtor argues that Plaintiff did not justifiably rely on Debtor's statements because to the extent that Plaintiff required Debtor to be domiciled in St. Charles County, no such proof such as a library card or voter registration was requested or required at any time.  Debtor also argues that Plaintiff's loss is not the proximate result of where Debtor stated he lived because where someone lives has no effect on the likelihood of whether that individual will pay their debt and Plaintiff's loss is only a result of Debtor's default in payments.  Debtor asserts a counterclaim under Section 523(d) for reasonable attorneys fees and that a reasonable amount of time be permitted for Debtor's counsel to submit a fee application.

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334 (2012) and Local Rule 81-9.01(B) of the United States District Court for the Eastern District of Missouri.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (I) (2012).  Venue is proper in this

District under 28 U.S.C. § 1409(a) (2012).

## **CONCLUSIONS OF LAW**

This matter centers on whether Debtor lived in St. Charles County at the time he obtained financing from Plaintiff.  If yes, the debt owed to Plaintiff is dischargeable.  If no, the debt may be excepted from discharge if Plaintiff has met its burden of proof under Section 523(a)(2)(A).  The Court rules as follows.

Under Section 523(a)(2)(A), a debtor cannot obtain a discharge from any debt "for money, property, services…to the extent obtained by – false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A) (2012).  To establish fraud pursuant to Section 523(a)(2)(A), a creditor must prove the following elements by a preponderance of the evidence:

1. The debtor made a representation.
2. The debtor knew the representation was false at the time it was made.
3. The representation was deliberately made for the purpose of deceiving the creditor.
4. The creditor justifiably relied on the representation.
5. The creditor sustained the alleged loss as the proximate result of the representation having been made.

*In re Maurer,* 256 B.R. 495, 500 (B.A.P. 8th Cir. 2000).  Whether a creditor justifiably relies on a representation depends on the "qualities and characteristics of the particular [creditor], and the circumstances of the particular case." *Field v. Mans,* 516 U.S. 59, 71, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995) (discussing § 540 of the Restatement (Second) of Torts (1976) and stating that a creditor's reliance on a false statement is justifiable even when the creditor might have ascertained the falsity of the representation had the creditor investigated).  Nevertheless, a plaintiff is still "'required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination and investigation.'" *Id.* (quoting Restatement (Second) of Torts § 541 cmt. a (1976)).

-7-

Thus, a plaintiff who disregards red flags will not be able to satisfy the justifiable reliance standard.

*In re Casper,* 466 B.R. 786, 794 (Bankr. M.D. N.C. 2012) (citing *Giovanni v. Grayson, Kubli, & Hoffman (In re Giovanni),* 324 B.R. 586, 594 (E.D. Va. 2005) (citation omitted)).

For Debtor to be a member of Plaintiff and thus be eligible to obtain financing from Plaintiff, Debtor needed to live, worship or work in St. Charles County.  There has been no representation that Debtor either worshiped or worked in St. Charles County.  This dispute centers on whether Debtor in fact 'lived' in St. Charles County at the time Debtor obtained financing from Plaintiff to purchase the Vehicle.

Debtor testified that he lived in St. Charles County in that he lived at 54 Dogwood with his now ex-girlfriend.  Debtor testified that he ate, slept, left his clothes, accepted some mail, left for work, returned from work and spent the majority of his free time at 54 Dogwood.  Debtor argues that Plaintiff conflates the issue in that Plaintiff has presented this Court with evidence of domicile, which is not the proper inquiry because there was never a requirement of Debtor that he be domiciled in St. Charles County to be a member of Plaintiff.

Merriam-Webster's online dictionary defines the intransitive verb "live" as: "to occupy a home." Merriam-Webster Online Dictionary, at http://www.merriam-webster.com/dictionary/live (last visited Dec. 18, 2012). The word "live" is not defined in Black's Law Dictionary, however, the word "residence" is defined as follows:

> 1. The act of living in a given place for some time <a year's resi-dence in New Jersey>... 2. The place where one actually lives, as distinguished from a domicile...Residence just means bodily presence as an inhabitant in a given place; domicile requires bodily presence plus an intention to make the place one's home.  A person thus may have more than one residence at a time but only one domicile.

Black's Law Dictionary 1423 (9th ed. 2009).  Black's Law Dictionary defines domicile as:

> 1. The place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and

permanent home, to which that person intends to return and remain even though currently residing elsewhere. A person has a settled connection with his or her domicile for legal purposes, either because that place is home or because the law has so designated that place...2. the residence of a person...for legal purposes.

Black's Law Dictionary 558-59 (9th ed. 2009).

Plaintiff presented this Court with its Certificate of Approval of Amendment of Charter/Bylaws, as issued by the National Credit Union Administration, which requires that membership shall be limited to all persons who *live* in St. Charles County; this document does not require that membership be limited to persons who are *domiciled* in St. Charles County.

Mr. Adewunmi testified that Debtor was not on the lease at 54 Dogwood and that he has never before seen Debtor. This however has little weight because Mr. Adewunmi further admitted that but for a maintenance call, he would have no occasion to be at 54 Dogwood. Debtor has never professed to be on the lease at 54 Dogwood, nor does one have to be on a lease to *occupy a home.*

The affidavit of Mr. Gilbert, as well as the proof that Debtor paid his 2008 Property Taxes in St. Louis City, tends to prove domicile rather than whether or not Debtor *lived* in St. Charles County. The 2008 Property Tax bill required Debtor to affirm that on January 1, 2008, he owned a 1999 Chevrolet Tahoe, which Debtor indeed owned at that time. Debtor traded-in the 1999 Chevrolet Tahoe in March 2008 when he purchased the Vehicle. Debtor's 2008 Property Tax payment in St. Louis City provides this Court with very little evidence that he did not *occupy a home* in St. Charles County on or about March 24, 2008.

Likewise, the affidavit of Mr. Chrismer which states that Mr. Chrismer has not found any record that Debtor has registered to vote in St. Charles County does not dispel whether Debtor *lived* in St. Charles County at the relevant time. Mr. Chrismer's affiance tends to prove domicile, which is not a written membership requirement of Plaintiff.

Debtor's testimony was that he began living at 54 Dogwood in November of 2007 and that he left 54 Dogwood, reunited with his now wife and moved back to 3138 Caroline in June 2008. The Lou Fusz Dodge Form, which is signed by Debtor on or about March 24, 2008, states that Debtor's home address is 54 Dogwood and that Debtor lived there for one (1) month and that Debtor's previous home address was 3138 Caroline where Debtor lived for 10 years.  Whether or not Debtor lived at 54 Dogwood from November 2007 or February 2008, one month before March 2008, is irrelevant.  Rather, it only matters that Debtor lived at 54 Dogwood on or about March 24, 2008.  Moreover, there is no evidence or testimony that eligibility for membership of Plaintiff is also conditioned on the duration the applicant lives, works or worships in St. Charles County, be it before or after membership is obtained.   This Court concludes that Plaintiff has not proven by a preponderance of the evidence that Debtor knowingly made a false statement when Debtor indicated that on or about March 24, 2008, he lived – *occupied a home* – in St. Charles County.

Even if this Court were to accept that though Plaintiff is required to limit membership to those who live, worship or work in St. Charles County and that "live" in effect means individuals who are "domiciled" in St. Charles County, Plaintiff has not met its burden of proof that it justifiably relied on Debtor's statements.  First, the paperwork and other documents presented to CULS, which Mr. Kelleher describes as Plaintiff's agent, contains numerous instances where 3138 Caroline is reported as either Debtor's previous address or as Debtor's current address.  In particular, the Loan Link Lending Center document, which was presumably presented to or created by CULS before CULS approved the loan, makes no mention of Debtor's address as 54 Dogwood.   The Lou Fusz Dodge Form states that Debtor's present home address is 54 Dogwood, that Debtor has lived there for one (1) month and that Debtor's previous address is 3138 Caroline where Debtor lived for 10 years.  Given the arguments presented by Plaintiff, cursory review of the Lean Link Lending Center document, as well as the paperwork, should have prompted further investigation by CULS as Plaintiff's agent.  It did not.  As such, the Court concludes that neither the second, third nor fourth

-10-

elements to establish fraud pursuant to Section 523(a)(2)(A) have been proven by a preponderance of the evidence.

Finally, Debtor asserts a counter-claim against Plaintiff under Section 523(d) for attorneys fees.  Section 523(d) states in relevant part that a debtor may be awarded reasonable attorneys fees for an unsuccessful action brought by a creditor under Section 523(a)(2) where there are no special circumstances that would make such an award unjust "if the court finds that the position of the creditor was not substantially justified...." 11 U.S.C. § 523(d) (2012).  This cost-shifting provision was added by Congress to "reduce the pressure on the honest individual debtor to settle this type of nondischargeability claim for the sole purpose of avoiding attorney's fees and costs of litigation." See 2011–2 Hon. Nancy C. Dreher & Hon. Joan N. Feeney, Bankruptcy Law Manual § 8:7 (5th ed. 2011); see also *Star Bank, N.A., v. Stearns (In re Stearns),* 241 B.R. 611, 628 (Bankr. D. Minn.1999) (Congress enacted § 523(d) to "discourage creditors from commencing meritless dischargeability proceedings in the hope of coercing settlement from impecunious debtors who fear the costs of vindicating themselves through litigation on the merits.") (internal citations omitted).

Under Section 523(d), an award of reasonable attorney's fees is appropriate only if a debtor demonstrates the following five elements:

> (1) The creditor filed a nondischargeability action under § 523(a)(2);
> (2) The obligation must concern a consumer debt;
> (3) The obligation must be found to be dischargeable;
> (4) The complaint must not have been substantially justified; and
> (5) The bankruptcy court must be satisfied that there are no special or unique circumstances, which would make the imposition of costs and attorneys' fees unjust.

*Shahidulla v. Knoche (In re Shahidulla),* 465 B.R. 511, 513 (Bankr. D. Minn. 2012) (citing *Congressional Federal Credit Union v. Pusateri (In re Pusateri),* 432 B.R. 181, 197 (Bankr. W.D. N.C. 2010)).

-11-

Here, there can be no dispute that the first two elements are met in that Plaintiff has brought an action under Section 523(a)(2) and the debt concerns a consumer debt.  Based on the foregoing, this Court has concluded that the debt is dischargeable thereby satisfying the third element.  This Court however concludes that Plaintiff was substantially justified when Plaintiff brought forth this Complaint.  Plaintiff presented this Court with cogent arguments and testimony as to why it believed Debtor made a false statement upon which it relied and why the debt should be excepted from discharge.  Plaintiff's major pitfalls are that its charter requires that its members live rather than be domiciled  in St. Charles County and that Plaintiff did not verify the information provided on the loan application.  This Court understands Plaintiff's loan structure as a CULS member, nevertheless, Plaintiff must meet is burden by a preponderance of the evidence.   The mere fact that this Court has not ruled in favor of Plaintiff however does not render Plaintiff's position substantially unjustified.  Accordingly, by separate Order, judgement will be entered in favor of Debtor and the debt owed to Plaintiff will not be excepted from discharge and judgement will be entered in favor of Plaintiff on Debtor's counterclaim and Debtor's request for reasonable attorney's fees will be denied.

KATHY A. SURRATT-STATES
United States Bankruptcy Judge

DATED:  March 14, 2013
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO  63102

Richard P. Dorsey, III
Ahlheim and Dorsey, LLC
2209 First Capitol Dr.
St. Charles, MO 63301

Missouri Valley Federal Credit Union
Richard P. Dorsey
2209 First Capitol Drive
Saint Charles, MO 63301

Joddy Terrell Henderson, Sr
3138 Caroline
St. Louis, MO 63104

Charles H. Huber
Charles H. Huber Law Firm
500 Northwest Plaza, Ste. 911
St. Ann, MO 63074